UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TYRONE WALTON | CIVIL ACTION |
| VERSUS | NO. 11-1819 |
| E S & H, INC. | SECTION  "N"  (2) |

### ORDER AND REASONS

Before the Court are the following motions:   (1)  a Motion for Summary Judgment, filed by plaintiff **(Rec. Doc. 170)**; and (2) a Motion for Summary Judgment on Behalf of McGee's Landing, Inc. ("McGee's") **(Rec. Doc. 171)**.  Markel American Insurance Company ("Markel") has filed an opposition memorandum (Rec. Doc. 175).   McGee's and the plaintiff each have filed a reply memorandum (Rec. Docs. 180, 182).

### I. BACKGROUND:

This action was commenced when plaintiff Tyrone Walton brought suit for personal injuries allegedly sustained on July 27, 2010, near Grand Isle, Louisiana, when the *M/V Atchafalaya Princess* came into contact with a moored vessel, the *M/V Miss Katelyn* (later identified as the *M/V Outboat*) as the *Atchafalaya Princess* came into dock.  Walton alleges that he was aboard the *Miss Katelyn* (or the *Outboat*) at the time the vessels allegedly made contact.  He has sued McGee's Landing, Inc. ("McGee's") as the owner/operator of the *Atchafalaya*

*Princess*.[1]  *See* Rec. Doc. 9.  Shortly after suit was filed, Markel, McGee's insurer, filed a complaint in intervention seeking a declaratory judgment decreeing that the policy for the period and vessel in question precludes coverage for Walton's claims.  *See* Rec. Docs. 24, 25, 29.  Plaintiff later amended his complaint to add a direct action against Markel.

In the instant motions, both plaintiff and McGee's seek summary judgment declaring that the Markel commercial watercraft insurance policy (policy No. CM2011595) ("the Policy") provides coverage for the incident in question.[2]

## II.     LAW AND ANALYSIS:

### A.     Standard on Summary Judgment:

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the issue is one on which the nonmoving party will bear the burden at trial, then "the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party has carried this burden, the

---

[1] Plaintiff initially sued ES&H, Inc. and later Florida Marine, LLC, as owners and/or operators of the *Atchafalaya Princess*.  However, he later dismissed his claims against both these defendants and amended his complaint to add McGee's as a defendant.  *See* Rec. Docs. 53, 58, 59, 60, 66.

[2] In its original motion papers, McGee's makes the alternative argument that Markel was also bound on a new (higher limit) policy (Policy No. CB2011146) at the time of the alleged incident.  *See* Rec. Doc. 171-1 at 10.  However, this contention is belied by the policy itself, as well as deposition testimony submitted by Markel.  *See* Rec. Doc. 175 at 23-24 and materials cited therein.  McGee's appears to have abandoned this argument in its reply memorandum.  Rec. Doc. 180.

nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).   "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Id.*   "If the nonmoving party responds satisfactorily, the motion for summary judgment is denied, and the case proceeds to trial."  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).

### B. <u>Applicable Law</u>:

"[I]n the absence of a specific and controlling federal rule," the interpretation of marine insurance policies is "to be determined by reference to appropriate state law."  *Gabarick v. Laurin Maritime (America), Inc.,* 650 F.3d 545, 552 (5th Cir. 2011)  (quoting *Albany Ins. Co. v. Kieu*, 927 F.2d 882, 886 (5th Cir.1991)); *see Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 320–21 (1955); *Cal-Dive Intern., Inc. v. Seabright Ins. Co.,* 627 F.3d 110, 113 (5th Cir. 2010).   To determine whether there is a "specific and controlling federal rule," courts should consider:  "(1) whether the federal maritime rule constitutes 'entrenched federal precedent,'...; (2) whether the state has a substantial and legitimate interest in the application of its law...; (3) whether the state's rule is materially different from the federal maritime rule."  *Kieu*, 927 F.2d at 886 (citations omitted).  "These factors are merely instructive and not dispositive."  *Id.* at 887.

Here, the parties agree that the relevant body of applicable state law is that of Louisiana.  "Under Louisiana law, an insurance policy is a contract between the parties and should be interpreted according to the general rules of interpretation of contracts prescribed in the Louisiana Civil Code."  *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844–45 (5th Cir.2010); *Gulf*

3

*Island, IV v. Blue Streak Marine, Inc.*, 940 F.2d 948, 952 (5th Cir. 1991).  "Interpretation of a contract is the determination of the common intent of the parties."  La. Civ. Code art. 2045.  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."   La. Civ. Code art. 2046.  "The words of a contract must be given their generally prevailing meaning."  La. Civ. Code art. 2047.  "Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."  *Id.*  "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract."  La. Civ. Code art. 2048.  "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."  La. Civ. Code art. 2049.  "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."  La. Civ. Code art. 2050.

"A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."  La. Civ. Code art. 2053.  However, "[a] contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."  La. Civ. Code art. 2056.  Thus, where a policy provision is ambiguous, "the ambiguity is to be construed in favor of the insured and a provision which seeks to narrow an insurer's obligation is to be construed against the insurer."  *Exxon Corp. v. St. Paul Fire and Marine Ins. Co.*, 129 F.3d 781, 788 (5th Cir. 1997) (interpreting marine protection and indemnity policy); *Gulf Island*, 940 F.2d at 952 (interpreting marine insurance policies).

### C.     Coverage Defenses Asserted by Markel:

In opposition to the plaintiff's and McGee's motions for summary judgment, Markel asserts two defenses:    (1) the *Atchafalaya Princess* was operating outside of the prescribed navigational limit contained in the Policy; and (2) under the doctrine of *uberrimae fidei* ("utmost good faith"), McGee's vitiated coverage by using the vessel to transport oil-spill workers, when the use stated on the application that of a tour boat.[3]

### 1.     Navigational Limit:

The "Navigation and Geographic Limits" provision of the Policy provides:

> **NAVIGATION AND GEOGRAPHIC LIMITS:**   This Policy covers only damages or loss which occurs within the navigation limits indicated on the Declarations Page and, unless otherwise stated, no more than 50 miles offshore.  If the Insured Watercraft is being transported over land, this Policy only covers damage or loss which occurs within 500 miles from the storage facility listed on the application You submitted to obtain this Policy.  If the Insured Person breaches the navigation or geographic limits of this Policy, coverage shall be suspended and void until the Insured Watercraft returns to the navigation or geographic limits provided by the Policy.

*See* Rec. Doc. 175-10 at 19.[4]    The declarations page of the Policy contains the following statement under the heading "Navigational Limitations":

> INLAND LAKES, RIVERS AND INTRACOASTAL WATERWAYS OF USA (EXCLUDING GREAT LAKES, & TRIB, LAKES MEAD, POWELL AND TAHOE AND FOX RIVER-CHAIN OF LAKES, IL)

---

[3] In its complaint, Markel asserts additional grounds for excluding coverage, such as alleged breach of the continuing warranty of seaworthiness and/or charter limitation and that the *Atchafalaya Princess* was not a covered vessel.  Rec. Doc. 29.  The evidence has shown these contentions to be without basis, and Markel no longer presses them in its opposition to the instant motions.

[4] "In consideration of the premium paid," this provision replaced the navigational limits provision contained in the standard form commercial watercraft insurance policy, which is identical except that it limits coverage to "no more than 25 miles offshore." Rec. Doc. 175-10 at 10.

*See* Rec. Doc. 175-10 at 2-5.

It is uncontested that the incident in question (*i.e.*, contact between the *Atchafalaya Princess* and the *Outboat*) occurred at a dock on the northern (bay) side of Isle Grand Terre in Barataria Bay. As the United States Supreme Court has recognized, Barataria Bay is an "inner bay," within the coast of Louisiana, which constitutes "inland waters" and is "wholly separated from the outer body of water and linked only by narrow passages or channels." *United States v. Louisiana*, 394 U.S. 11, 51 (1969). Isle Grand Terre is one of the barrier islands that divides and protects Barataria Bay from the Gulf of Mexico. It is adjacent to the populated island of Grand Isle and located in Jefferson Parish, Louisiana.

The north side of Isle Grand Terre is considered "inland" by any standard used for dividing inland waters from "offshore" waters. It is inside the Boundary Line (which "marks the dividing point between internal and offshore waters for several legal purposes," including load line requirements and inspection requirements) and inside the Demarcation Line ("which is the dividing point between domestic rules-of-the-road (Inland Navigating Rules) and the international rules-of-the-road (Convention on the International Regulations for Preventing Collision at Sea, or COLREGS)"). *See* United States Coast Guard official website, http://www.uscg.mil/hq/cg5/cg5212/boundaryline.asp (visited Oct. 7, 2013); *see also* 46 C.F.R. § 7.1. Indeed, it is inside (landward of) the baseline (which marks the Louisiana coastline, the seaward limits of the State's inland waters, and the landward limits of the State's territorial sea) and almost certainly would have been so even if a stricter geographical test had been used to define the Louisiana coastal boundary. *See Louisiana*, 394 U.S. at 51, 59.

The movants argue that the term "inland lakes, rivers and intracoastal waterways of USA" is clear and explicit and should be applied as written.  The plain meaning of "intracoastal" is "being within and close to the coast or belonging to the inland waters near the coast <an intracoastal waterway>." *See* http://www.merriam-webster.com/dictionary/intracoastal (visited Oct. 7, 2013); *see also* http://dictionary.reference.com/browse/intracoastal.  ("located or occurring within a coastline; also located or occurring close to a coast") (visited Oct. 7, 2013); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1966 unabridged ed.) ("being within and close to the coast or belonging to the inland waters near the coast (an ~ waterway)").

As discussed above, Barataria Bay is within the Louisiana coast using even the strictest standard.  Thus, it plainly falls within the term "intracoastal waterways" if those words are to be given their plain, ordinary meanings.  Markel, however, argues that the navigational limit should be read to preclude operation of an insured vessel "seaward of the Intracoastal Waterways of the United States" – *i.e.*, those water routes, designated in 33 U.S.C.A. § 1804, consisting of The Atlantic Intracoastal Waterway and The Gulf Intracoastal Waterway.  *See* Rec. Doc. 175 at 13.  Elsewhere, Markel argues that the navigational limits of the Policy restrict coverage to bodies of water that are:  (1) "located away from the sea" (Markel's definition of "inland") and "slow moving or standing basins surrounded by land" (Markel's definition of "lakes"); (2)  "located away from the sea" and "streams of water that flow in a channel" (Markel's definition of "rivers"); or (3) ) "located away from the sea" and "the demarcated water route that extends along the Atlantic Coast and the Gulf Coast (Markel's definition of "intracoastal waterways").  *Id.* at 17.  According to Markel, the navigational limits "preclude operation of the vessel on all other waters...." *Id*. at 17.

7

Markel's labored (and internally inconsistent) interpretation is simply not supported by the written language of the Policy itself.  The Policy as written contains none of the unwritten rules and qualifications advocated by Markel.  It does not state that coverage is limited to navigation in "The Gulf Intracoastal Waterway, The Atlantic Intracoastal Waterway, or a river or lake that is landward of The Intracoastal Waterways."   Nor does it include "waters seaward of The Intracoastal Waterway" among the waters excluded from the coverage area.   Indeed, it does not even use the term "<u>the</u> intracoastal waterways," which at least would have provided a subtle hint that a specific waterway might have been intended.  Instead, it states simply that navigation is limited to "inland lakes, rivers and intracoastal waterways of USA (excluding Great Lakes, & Trib, Lakes Mead, Powell and Tahoe and Fox River-chain of lakes."   The Court finds these terms to be clear and unambiguous.  Giving them the straightforward reading urged by the movants does not lead to absurd consequences.  To the contrary, it is Markel's elaborate and unwritten rules that would result in an unwieldy and impracticable contract with unpredictable, contradictory, and illogical results.

In Southeast Louisiana, the Gulf Intracoastal Waterway passes north of English Turn in New Orleans, dozens of miles north of the Louisiana coast.   There are vast stretches of inland canals, bayous, swamps, bays, and wetlands on the seaward side of The Gulf Intracoastal Waterway, where coverage would be suspended under Markel's interpretation.   Indeed, there are "inland lakes" and "rivers" that are seaward of The Gulf Intracoastal Waterway.   Although these are specifically enumerated in the Policy as within the navigational limit, it is far from clear whether they would be covered under Markel's new rules.   Unlike the movants' straightforward reading, whereby the geographic limits of coverage are readily ascertainable by

consulting any map of United States coastal boundaries, Markel's interpretation is confusing, vague, and fraught with uncertainty.  An insured navigating inland waters of a coastal region would constantly need to wonder and worry —  with no clear answers — whether the insured vessel might be outside the navigational limits.  Such an interpretation is not reasonable under any measure.

Because the Court does not find the meaning of the provision to be doubtful, the Court need not decide whether it must consider outside evidence of "usage" (as advocated by Markel) prior to construing the policy in favor of the insured.  *Compare* La. Civ. Code art. 2053 ("A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.") *with* La. Civ. Code art. 2056 ("A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."); *see also Exxon*, 129 F.3d  788 ("ambiguity is to be construed in favor of the insured and a provision which seeks to narrow an insurer's obligation is to be construed against the insurer."); *Gulf Island*, 940 F.2d at 952 ("if an ambiguity exists in the policy, then the ambiguous policy provision is to be construed against the insurer").  The Court need not resort either to outside evidence or to construction in favor of the insured.  The words of the Policy "are clear and explicit and lead to no absurd consequences," and therefore "no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046.  The Court finds that Barataria Bay is plainly within the navigational limit under any reasonable interpretation of the Policy.

### 2. *Uberrimae Fidei*:

In the alternative, Markel argues that under the doctrine of *uberrimae fidei* ("utmost good faith"), McGee's vitiated coverage by using the vessel to transport workers in the oil spill clean-up efforts, when the use stated on the application was "Tour Boat."[5] Assuming that *uberrimae fidei* would displace Louisiana state law on this issue (which is not without doubt),[6] Markel has pointed the Court to no case that would apply the doctrine to facts such as those presented here. *Uberrimae fidei* voids marine insurance contracts *ab initio* where the insured has misrepresented or withheld material facts from the insurer. *See McLanahan v. Universal Ins. Co.*, 26 U.S. 170, 185 (1828). Here, there is no allegation and certainly no evidence that McGee's withheld or misrepresented any facts at any time — either during the application process or when it decided to use its vessel to transport workers for the oil spill clean-up efforts. Rather, Markel argues that McGee's *use* of the vessel (*i.e.*, to transport workers in Barataria Bay) somehow voided the Policy. However, the Policy contains no warranty or exclusion prohibiting such use. The Policy does not restrict the type of passengers the vessel may transport (tourists versus workers). Nor does it restrict the vessel to a particular "swamp" or other body of water. As discussed above, it covers navigation on "inland lakes, rivers and intracoastal waterways of USA

---

[5] The 2008 predecessor application that Markel relies upon for this argument states: "How Are Watercraft Used By This Operation? Tour Boat." Rec. Doc. 175-9 at 2. It does not appear to contain any representation as to where the vessels were used.

[6] *See Albany Ins. Co. v. Kieu*, 927 F.2d 882, 889-90 (5th Cir. 1991) (finding that *uberrimae fidei* is not "entrenched federal precedent" and thus does not displace application of state law to marine insurance); *see also Black Stallion Enterpr. v. Bay & Ocean Marine, LLC*, 2010 WL 1333272 *5 (E.D. La. 2010); *Felham Enterpr. (Cayman) Ltd. v. Certain Underwriters at Lloyds*, 2005 WL 2050284 *12 (E.D. La. 2010); *Insurance Co. of N. America v. West of England Shipowners Mut. Ins. Assn.*, 890 F. Supp. 1302, 1306 (E.D. La. 1995).

(excluding Great Lakes, & Trib, Lakes Mead, Powell and Tahoe and Fox River-chain of lakes." Rec. Doc. 175-10 at 2. The Court can find no case in which a court used *uberrimae fidei* to re-write a policy as Markel seeks here.[7]

Accordingly, the Court finds that no genuine dispute of material fact exists regarding the issue of coverage and that McGee's and Tyrone Walton are entitled to judgment as a matter of law declaring that the Markel commercial watercraft insurance policy (policy No. CM2011595) ("the Policy") provides coverage to McGee's for claims arising from the alleged incident.

### III.  CONCLUSION:

**IT IS ORDERED** that the following motions are hereby **GRANTED**: (1) Motion for Summary Judgment, filed by plaintiff **(Rec. Doc. 170)**; and (2) Motion for Summary Judgment on Behalf of McGee's Landing, Inc. **(Rec. Doc. 171)**.

New Orleans, Louisiana, this  10th  day of October, 2013.

**KURT D. ENGELHARDT**
**United States District Judge**

---

[7] The only case cited by Markel is *Sun Mut. Ins. Co. v. Ocean Ins. Co.* 107 U.S. 485 (1883), in which a primary insurer failed to inform the reinsurer (upon applying for the reinsurance) that the vessel had been grossly over-insured for the voyage. *Id.* at 510.

11